## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Manuel JIMENEZ, | ) | No. 3:19-cv-00078 (KAD) |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| M & L CLEANING, INC., | ) | |
| and John MELIA, | ) | |
| *Defendants.* | ) | OCTOBER 27, 2021 |

## MEMORANDUM OF DECISION
## RE: PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, ECF NO. 71

Kari A. Dooley, United States District Judge:

This action for unpaid overtime and other damages arises out of Plaintiff Manuel Jimenez's employment with M & L Cleaning, Inc. and John Melia, collectively the "Defendants." Plaintiff, individually and on behalf of all other similarly situated individuals, filed his complaint against the Defendants on January 14, 2019. (ECF No. 1.) Plaintiff brought two causes of action: a purported collective action claim seeking overtime pay, fees, and penalties pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, and a purported class action seeking overtime pay, fees, and penalties pursuant to the Connecticut Minimum Wage Act, Conn. Gen. Stat. §§ 31-58, *et seq.*, and Conn. Gen. Stat. § 31-72, otherwise referred to as the "CMWA."

After discovery commenced, Defendants' counsel sought to withdraw, which the Court allowed on April 3, 2020. (ECF No. 40.) Thereafter, M & L Cleaning, Inc., failed to secure substitute counsel and Mr. Melia failed to secure substitute counsel or appear *pro se.* (*See* ECF No. 42.) On May 11, 2020, Plaintiff accordingly moved for default entry against the Defendants pursuant to Fed. R. Civ. P. 55(a), which the Clerk of Court granted on May 20, 2021. (ECF No.

46.)  Thereafter, the Court granted Plaintiff's motion for conditional certification as a Fair Labor Standards Act, or "FLSA," collective action. (ECF No. 50.)

After conditional certification of the FLSA collective action, Plaintiff's attempts to obtain the information necessary to proceed as a collective action were largely unsuccessful.[1] During a telephonic status conference on January 20, 2021, Plaintiff advised that in light of these difficulties, Plaintiff intended to abandon his efforts at collective certification for his FLSA claim or class certification for his state law claim.[2] (*See* ECF Nos. 69, 70). Then, on May 13, 2021, Plaintiff, individually, moved for default judgment against the Defendants pursuant to Fed. R. Civ. P. 55(b). (ECF No. 71.)  The motion is GRANTED and Judgment shall enter in favor of the Plaintiff in accordance with the following.

## Standard of Review

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment[:] Plaintiff[] must first obtain an entry of default under Rule 55(a), by showing that the defaulting party 'has failed to plead or otherwise defend.'  The second step is to seek a default judgment under Rule 55(b)."  *Hernandez v. Apple Auto Wholesalers of Waterbury LLC*, 460 F. Supp. 3d 164, 176 (D. Conn. 2020) (quoting *Priestley v. Headminder Inc.*, 647 F.3d 497, 504 (2d Cir. 2011) (*per curiam*)) (quotation marks and internal citations omitted).

"It is well established that a party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision*

---

[1] Defendants failed to respond to Court ordered disclosures regarding the names and last known addresses of employees who worked for M & L Cleaning as cleaners between January 15, 2017 and the present. (*See* Order to Produce, ECF No. 62; Pl.'s Status Reports, ECF Nos. 66, 67.)

[2] The Court notes that by seeking judgment as to the Plaintiff only, the Plaintiff abandons the prosecution of this matter as a collective or class action. Moreover, the Court highlights that, although the Complaint referenced a "Connecticut Class" and Plaintiff's "Motion for Conditional Certification" invokes Fed. R. Civ. P. 23, the Court never certified a Rule 23 class, conditionally or otherwise. Accordingly, no claims, other than Plaintiff's, are addressed or decided herein, and the order of conditional certification is vacated.

*of S. Conn. Ltd. Partnership v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001) (citing *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). However, "in civil cases, where a party fails to respond, after notice the court is ordinarily justified in entering a judgment against the defaulting party." *Cablevision*, 141 F. Supp. 2d at 282 (quoting *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984)).

"In considering whether or not to grant a motion for default judgment, [the Court] may take into account whether the complaint states a valid cause of action." *ALV Events Int'l v. Johnson*, 821 F. Supp. 2d 489, 493 (D. Conn. 2010). Indeed, the district is "required to determine whether [the plaintiff's] allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). The allegations of the complaint are deemed proven for purposes of establishing such causes of action and the defendant's liability. *See Hernandez*, 460 F. Supp. 3d at 176. But even though the court must so accept Plaintiff's allegations, "a district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action." *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *see also* Fed. R. Civ. P. 55(b)(2)(c) ("The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . establish the truth of any allegation by evidence.").

The question of damages, on the other hand, must be established by the plaintiff. *Hernandez*, 460 F. Supp. 3d at 176. In determining damages, "[t]he outer bounds of recovery allowable are of course measured by the principle of proximate cause. The default judgment d[oes] not give plaintiff a blank check to recover from defendant any losses it had ever suffered from whatever source. It could only recover those damages arising from the acts and injuries pleaded and in this sense it [is] plaintiff's burden to show 'proximate cause.'" *Cablevision*, 141 F. Supp.

2d at 282 (quoting *Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158–59 (2d Cir. 1992)).

**Discussion**

The following allegations are drawn from the Complaint, ECF No. 1, and are deemed proven for purposes of the instant motion. Plaintiff was a resident of the Bronx, New York, and at all times relevant to this lawsuit, he was an employee of M & L Cleaning, Inc., and John Melia. M & L Cleaning, Inc., (alternatively "M & L" or "M & L Cleaning") was a Connecticut corporation with its principal place of busines in Stamford, Connecticut, while Mr. Melia, who was the president and CEO of M & L, resided in Norwalk, Connecticut. Mr. Melia had the ultimate and exclusive authority to set hours of employment, to direct work, and to pay Plaintiff's wages.

From approximately March 2016 through October 13, 2018, M & L Cleaning employed Plaintiff. Plaintiff worked as a cleaner, and his day began at approximately 7:40 a.m., when he would arrive for work at M & L's headquarters. Upon arrival, he would, along with his co-workers, prepare the company's cleaning vans for the day's work. Plaintiff would then leave the company's headquarters by 8:30 a.m. to arrive at the job site by 9:00 a.m. Plaintiff was given a half hour for lunch each day. At around 4:30 p.m., Plaintiff would depart the job site to make it back to the company's headquarters at 4:55 p.m. Monday through Thursday, he would then depart by 5:00 p.m. But on Fridays, Plaintiff was required to stay until 5:30 p.m. to clean the vans and prepare for work for the coming week.

Plaintiff received a flat weekly salary of $525,[3] and he was never required to clock in and out of his job. Plaintiff's checks did not list the number of hours that he worked, and he never

---

[3] The Complaint alleges that Plaintiff was paid $550 per week. However, Plaintiff's affidavit, offered in support of his motion for default judgment and which attached a copy of one of his paychecks, demonstrates that he was paid $525 per week.

received compensation at an overtime rate, despite working, per the above schedule, approximately forty-five hours per week.

***Liability***

"To succeed on a claim under the FLSA, plaintiff must prove that (1) the defendant is an employer subject to the FLSA; (2) the plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA."[4] *Piedra v. Ecua Restaurant, Inc.*, No. 17 CV 3316 (PKC) (CLP), 2018 WL 1136039, at *6 (E.D.N.Y. Jan. 31, 2018) (citing *Edwards v. Community Enters., Inc.*, 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003)) (further citations omitted). For an overtime claim specifically, plaintiff must also plead, and ultimately demonstrate, that he actually worked overtime hours for which he was not compensated. *See Sikiotis v. Vitesse Worldwide Chauffeured Services, Inc.*, 147 F. Supp. 3d 39, 43 (D. Conn. 2015); *see also Lundy v. Catholic Health Sys. Of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (holding that "a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours" to state a plausible FLSA overtime claim).

Here, Plaintiff has established Defendants' liability under both the FLSA and the CMWA. First, M & L Cleaning, Inc., and Mr. Melia are deemed to have admitted that they were employers under the FLSA and that they employed Plaintiff during the time in question. (Compl. ¶ 5.) Second, both M & L and Mr. Melia are subject to the FLSA. M & L is "an enterprise engaged in commerce" under the FLSA because, as demonstrated in Mr. Melia's affidavit submitted with the motion for default judgment, the company provided cleaning services across state lines (specifically, New

---

[4] As the *Piedra* Court noted, the burden of proving that an FLSA exemption applies falls on the defendant. As a result, the third element of an FLSA claim will generally be met in a default proceeding unless the plaintiff pleads or otherwise indicates that an exemption applies. *See Piedra*, 2018 WL 1136039, at *6 n.6 & *7 n.7 (citing *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012); *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014)). Similarly, the burden of demonstrating an exemption pursuant to the CMWA falls on the defendant. *See Velasquez v. U.S. 1 Farm Market, Inc.*, No. 3:13-cv-00634-GWC, 2016 WL 2588160, at *10 (D. Conn. May 3, 2016) (citing *Butler v. Hartford Tech. Inst.*, 243 Conn. 454, 464–66 (1997)).

York and Connecticut) and the company grossed more than $500,000 per year during the relevant time period. *See* 29 U.S.C. §§ 203(b), 203(s)(1). In addition to the deemed proven allegation that Mr. Melia was an employer under the FLSA, Mr. Melia was the "President and CEO" of M & L Cleaning, Inc. and had "ultimate and exclusive authority to set the hours of employment, to direct the work and to pay the wages of Jimenez." (Compl. ¶ 9.) *See Sikiotis*, 147 F. Supp. 3d at 46 ("Where a plaintiff-employee is employed by a corporation, individual officers or directors of the corporation may be deemed employers under the FLSA where the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines employees' salaries and makes hiring decisions.") (quotations, citations, and alterations omitted). *See also* 29 U.S.C. § 203(d) (defining employer as including "any person acting directly or indirectly in the interest of an employer in relation to an employee"; *Irizarry v. Catsimatidis*, 722 F.3d 99, 117 (2d Cir. 2013) (affirming summary judgment against an individual defendant).

The Complaint also sufficiently alleges that Plaintiff worked in excess of forty hours per week. *See Lundy*, 711 F.3d at 114. As related above, Plaintiff provides detailed allegations about the hours that he worked and where he incurred his overtime hours. After commuting to M & L Cleaning's headquarters, arriving at approximately 7:40 a.m., Plaintiff readied his van and then travelled to the job site. Any time spent readying the van and travelling to the job site was necessary, and an integral and indispensable part of Plaintiff's work, and it was therefore compensable. *See Sikiotis*, 147 F. Supp. 3d at 44–45 (citing 29 C.F.R. § 785.38; *Lassen v. Hoyt Livery, Inc.*, 120 F. Supp. 3d 165, 174 (D. Conn. 2015)). As alleged, Plaintiff worked approximately 45 hours per week.

As to Plaintiff's CMWA claims, the guarantees and protections provided under the CMWA are "similar to the FLSA." *Tapia v. Mateo*, 96 F. Supp. 3d 1, 5 (D. Conn. 2015) (quoting *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 263 n.2 (D. Conn. 2002)); *see also Cook v. Family Dollar Stores of Connecticut, Inc.*, No. X10CV116011946, 2013 WL 1406821, at * 2 (Conn. Supp. Ct. Mar. 18, 2013) (observing similarities between the CMWA and FLSA). Plaintiff's CMWA overtime claim rests specifically on Conn. Gen. Stat § 31-68, which closely mirrors the relevant definitions of employer and employee under the FLSA. Accordingly, the Court finds that Defendants are liable under the CMWA for the same reasons that Defendants are liable under the FLSA.

***Damages***

Plaintiff seeks $12,541.92 in unpaid wages in the form of compensatory damages; $12,541.92 in liquidated damages pursuant to the FLSA; $8,422.31 in liquidated damages pursuant to the CMWA; and $1,714.69 in prejudgment interest, for a total of $35,220.85. Although the Court finds that Plaintiff has proven his entitlement to damages, as discussed below, the Court does not award the full amount sought.

To determine damages, a court may conduct a hearing, or it may rely on the affidavits and other documentary evidence provided by plaintiff, obviating the need for a hearing on damages. *Ling Chen v. Asian Terrace Restaurant, Inc.*, 507 F. Supp. 3d 430, 433 (E.D.N.Y. 2020) (citing Fed. R. Civ. P. 55(b)(2); *Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 189 (2d Cir. 2015)). And, in an overtime wage case like this one, "when . . . no records have been produced as a consequence of a defendant's default . . . the plaintiff's recollection and estimates are presumed correct." *Cabrera v. Canela*, 412 F. Supp. 3d 167, 181 (E.D.N.Y. 2019) (citations, quotations, and alterations omitted). In this case, Plaintiff has

submitted sufficient documentary evidence so as to negate the need for an evidentiary hearing. Along with his motion for default judgement, Plaintiff submitted an affidavit, affidavits from his attorneys, and a damages summary that details the hours which Plaintiff worked but for which he was not compensated. These submissions are fulsome enough to allow the Court to determine an award of damages.

**Compensatory Damages**

Under both the FLSA and the CMWA, a plaintiff who was not paid overtime as required under the statutes is entitled to receive compensatory damages in the amount of the unpaid wages. *See* 29 U.S.C. § 216; Conn. Gen. Stat. § 31-68. Here, Plaintiff has established that he is entitled to compensatory damages for unpaid overtime worked.[5] Plaintiff earned $525.00 per week. Based upon a forty-hour work week, his hourly wage was $13.13.  However, he consistently worked 44.65 hours per week, resulting in unpaid overtime of 4.65 hours per week.  He was entitled to an overtime wage of $19.69 (one and a half times his hourly wage), resulting in unpaid overtime of $91.55 per week. *See* 29 U.S.C. § 207; Conn. Gen. Stat. § 31-76c; *see also Fuk Lin Pau v. Jian Le Chen*, No. 3:14cv841 (JBA), 2015 WL 6386508, at *11 (D. Conn. Oct. 21, 2015) (calculating, among other things, compensatory damages for overtime pay under the FLSA and CMWA). For the reasons discussed below, the Court awards compensatory damages for 92 weeks—January 14, 2017 through October 13, 2018, which totals $8,422.60.

Plaintiff asks for compensation for overtime hours worked prior to January 14, 2017. However, in order to award such damages the Court would need to find that the Defendants' conduct was willful, thereby extending the otherwise applicable two-year statute of limitations for

[5] Plaintiff does not seek compensatory damages for both his FLSA and CMWA claims, and, if he did, the Court could not grant such a request. *See Albertin v. Nathan Littauer Hosp. and Nursing Home*, --- F. Supp. 3d ---, 2021 WL 1742280, at *14 (N.D.N.Y. May 4, 2021) ("[T]he Court cannot allow plaintiff to recover twice for the same injury.").

8

FLSA claims to three years. *See* 29 U.S.C. § 255(a); *see also Whiteside v. Hover-Davis*, 995 F.3d 315, 322 (2d Cir. 2021) (noting that a plaintiff bears the burden of pleading and proving that a defendant's conduct is willful under the FLSA). However, the Court previously held, when declining to certify the conditional collective action back to January 15, 2016 (the three-year period before the filing of the complaint), that Plaintiff had not alleged a factual basis which would support a finding that Defendants' conduct was willful under the FLSA. *See Jimenez v. M & L Cleaning, Inc.*, No. 3:19-CV-00078 (KAD), 2020 WL 4462204, at *3 n.3 (D. Conn. June 22, 2020). Nothing in the submissions currently before the Court alters the Court's conclusion in this regard. Whether cognized as a failure to allege facts which would support a finding of liability that the Defendants willfully violated the FLSA, or a failure to prove an entitlement to damages going back three years instead of two, the Court cannot, on the present record, award damages for conduct outside the two-year statute of limitations for FLSA claims. *See* 29 U.S.C. § 255(a); *see also Whiteside*, 995 F.3d at 323 ("The FLSA's three-year limitations period for willful violations is the exception, not the rule."). Accordingly, the Court's damages calculation will encompass only the time period from January 14, 2017 through October 13, 2018, when the Plaintiff left the employ of the Defendants.[6] As indicated, the amount of compensatory damages to which the Plaintiff is entitled is $8,422.60.

**<u>Liquidated Damages</u>**

A successful plaintiff in either an FLSA claim or a CMWA claim, is entitled to an award of liquidated damages, which is generally the same amount as is awarded for compensatory

---

[6] The Court also notes that even though the allegations are deemed admitted, they still do not establish that Defendants' conduct was willful. The Complaint, at paragraph 49, indicates that Defendants "knew or should of have known that Jimenez" was entitled to overtime pay. The conclusory nature of this allegation aside,  "[t]he accepted standard for determining willful behavior, for which plaintiff bears the burden of proof . . . [is] 'that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

damages. *See* 29 U.S.C. § 216 ("Any employer who violates the provisions of . . . section 207 of this title shall be liable to the employee or employees . . . in the amount of the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages"); Conn Gen. Stat. § 31-68 ("If any employee is paid by his or her employer less than the . . . overtime wage to which he or she is entitled . . . he or she shall recover . . . twice the full amount of such . . . overtime wage less any amount actually paid to him or her by the employer"). Here, Plaintiff seeks a liquidated damages award for both the FLSA claim and the CMWA claim. In doing so, Plaintiff observes that Connecticut courts have split on the question of whether awarding liquidated damages pursuant to both statutes is permissible.

However, the cases Plaintiff relies upon predate both changes to the CMWA and the Second Circuit's decision in *Rana v. Islam*, which held that a plaintiff may not recover liquidated damages pursuant to both the FLSA and the New York Labor Law as such a recovery would be duplicative. 887 F.3d 118, 123 (2d Cir. 2018). In *Rana* the Second Circuit observed that "[w]hile the wording of the FLSA and NYLL liquidated damages provisions are not identical, there are no meaningful differences, and both are designed 'to deter wage-and-hour violations in a manner calculated to compensate the party harmed.'" *Id.* (quoting *Chuchuca v. Creative Customs Cabinets Inc.*, No 13-CV-2506 (RLM), 2014 WL 6674583, at *16 (E.D.N.Y. Nov. 25, 2104)) (further citations omitted). Moreover, one of the cases cited by Plaintiff, *Tapia v. Mateo,* draws a distinction between the FLSA and CMWA that no longer exists. 96 F. Supp. 3d at 5 ("Unlike the FLSA, to recover liquidated damages under the CMWA, an employee must show evidence of bad faith, arbitrariness, or unreasonableness.") (quotations and alterations omitted). After the *Tapia* decision, which was rendered in March 2015, the Connecticut legislature modified the CMWA such that an employee no longer needs to prove bad faith, arbitrariness, or unreasonableness in

order to recover liquidated damages. *See* An Act Concerning an Employer's Failure to Pay Wages, S.B. No. 914, 2015 General Assembly, Regular Session (Conn. 2015). Instead, the updated and current iteration of the CMWA is substantively the same as the FLSA, placing the burden on the employer to demonstrate that he acted in good faith to avoid having to pay liquidated damages. *Compare* Conn. Gen. Stat. §§ 31-68(a) & 31-72 *with* 29 U.S.C. §§ 216 & 260 (all indicating that a plaintiff "shall" recover an amount equal to the unpaid wages in liquidated damages unless the defendant demonstrates that he acted in good faith). *See also Velasquez, Inc.*, 2016 WL 2588160, at *13 (noting that "the [2015] amendments [to the CMWA] appear to render the previous distinctions between the FLSA and the CMWA largely illusory") (quotations omitted).

Accordingly, the Court sees no basis upon which to distinguish the holding in *Rana* from the situation presented here. *See Strauch v. Computer Sciences Corp.*, No. 3:14-CV-956 (JBA), 2018 WL 5870337, at *5 (D. Conn. Nov. 9, 2018) (maintaining, after plaintiff failed to respond to notice of supplemental authority concerning the *Rana* decision, that Connecticut class members could recover for either FLSA or CMWA liquidated damages, whichever was higher, but not both). Accordingly, the Plaintiff is entitled to liquidated damages in the amount of $8,422.60.

## **Prejudgment Interest**

Although not entirely clear, it appears that the Plaintiff seeks prejudgment interest pursuant to Conn. Gen. Stat. § 37-3a as to the CMWA claim only.[7] (Pl.'s Mem 11, ECF No. 72.) Section

---

[7] However, Plaintiff also states: "Plaintiff is entitled to a pre-judgment interest at a rate of the weekly average 1-year constant maturity treasury yield (currently 6%), to be computed daily, for the relevant time period. *See* 28 U.S.C. § 1961(a)." (Pl.'s Mem. 12.) Section 1961(a) does not expressly provide for an award of prejudgment interest, however, and the Second Circuit has stated that awarding prejudgment interest is a decision left to the trial court's discretion unless otherwise limited or set by law. *See New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 602–03 (2d Cir. 2003). Nor is it readily apparent where Plaintiff's request for prejudgment interest at six percent is tethered in any fashion to the 1-Year Treasure Constant Maturity Rate. That rate, since at least 2017, has not been above three percent. *See* "1-Year Treasury Constant Maturity Rate," Federal Reserve Economic Data, Federal Reserve Bank of St. Louis, https://fred.stlouisfed.org/series/DGS1 (last visited October 7, 2021). Accordingly, the Court addresses prejudgment interest only as contemplated under Section 37a-3 especially insofar as the request for prejudgment interest appears to be tied only to the CMWA claim. (*See* ECF No. 74-1.)

37-3a allows for prejudgment interest up to ten percent per year to be recovered "in civil actions . . . as damages for the detention of money after it becomes payable." Conn. Gen. Stat. § 37-3a(a). Such an award is within the court's discretion when the detention of money is wrongful, *i.e.*, done without legal right. *See Marulli v. Wood Frame Const. Co., LLC*, 154 Conn. App. 196, 205–207 (2014) (citing *Sosin v. Sosin*, 300 Conn. 205, 244–45 n.25 (2011)). Connecticut district courts have applied this provision to overtime wages wrongly withheld. *See Cabrera v. G.T. Const.*, No. 3:05CV812 (MRK) (WIG), 2006 WL 1272618, at *1 (D. Conn. Mar. 27, 2006).

The Court finds the request for six percent prejudgment interest reasonable given the nature of Defendants' default, the fact that the money—in the form of overtime pay—was wrongfully withheld, and the Court's recognition that Plaintiff would have had the benefit of those funds to invest as he saw fit had he been paid what he was owed. Consequently, the Court awards prejudgment interest at the rate of six percent.

In this vein, prejudgment interest begins to accrue with the issuance of each paycheck that failed to compensate the Plaintiff for his overtime work. The Court has reviewed the Plaintiff's spreadsheet in which the prejudgment interest from the date of each paycheck, through April 20, 2021, is calculated and agrees that as of April 20, 2021, prejudgment interest of $1714.69 had accrued and should be awarded. In addition, from April 21, 2021 through the date of judgment, additional prejudgment interest of $262.20 is awarded, which is equal to the per diem interest of $1.38 times the 190 days that have passes since April 20, 2021.[8]

**<u>Attorneys' Fees</u>**

Plaintiff also seeks attorneys' fees and costs pursuant to the FLSA. (Pl.'s Mem. 12–13.) Plaintiff seeks $36,288.75, of which $21,563.75 represents work by the Law Offices of Jacob

---

[8] The Court arrived at this per diem amount by multiplying the total amount owed in compensatory damages by the daily interest rate, which is equal to six percent divided by the number of days in the year.

Aronauer and $14,725.00 represents work by Anthony J. LaBella of Ury & Moscow, LLC. Both attorneys submitted affidavits and time sheets to verify their fees and costs.

The FLSA provides that "[t]he court in such action shall . . .allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 206(b). Likewise, the CMWA provides that a plaintiff "shall recover . . . costs and such reasonable attorney's fees as may be allowed by the court." Conn. Gen. Stat. § 31-68(a)(1). Courts in the Second Circuit determine whether an award of attorneys' fees is reasonable by "calculat[ing] a 'presumptively reasonable fee' by determining the appropriate billable hours expended and 'setting a reasonable hourly rate, taking into account all case-specific variables.'" *Lilly v. City of New York*, 934 F.3d 222, 229–230 (2d Cir. 2019) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany Bd. of Elections*, 522 F.3d 182, 189–90 (2d Cir. 2008)); *see also DiPippa v. Fulbrook Capital Management*, No. 3:19-CV-01386 (KAD), 2020 WL 1940759, at *2 (D. Conn. Apr. 22, 2020) (referring to this process as a lodestar calculation). A presumptively reasonable rate is one that "a paying client would be willing to pay," both with the understanding that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively" and with the presumption that such a client will normally hire counsel from within his district who charges the prevailing rate within that district. *See Arbor Hill*, 522 F.3d at 190–91. Rate deviations can be made if they would be reasonable under the circumstances, a consideration that includes looking at the factors in *Johnson v. Georgia Highway Express*. *See Lilly¸* 934 F.3d at 230 (quoting *Arbor Hill*, 522 F.3d at 190 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989))). Further, after a district court calculates the presumptively reasonable fee by multiplying the billable hours by the presumptively reasonable rate, the court "may, in extraordinary circumstances, adjust the

presumptively reasonable fee when it 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *Lilly*, 934 F.3d at 230 (quoting *Millea v. Metro-North R. Co.*, 658 F.3d 154, 167 (2d Cir. 2011)).

Plaintiff's attorneys request to be compensated at a rate of $400 per hour, and they further ask that their paralegals be compensated at a rate of $150 per hour. The requested rate for attorneys' fees is arguably a little above average Connecticut rates. *See Tapia*, 96 F. Supp. 3d at 6–7 (collecting cases to find that Connecticut courts routinely approve rates between $300 and $350 per hour in FLSA disputes). However, *Tapia* was a 2015 case, and based upon more recent case law, it appears to the Court that an hourly rate of $400 is not uncommon. *See, e.g.*, *Perez v. Rossy's Bakery & Coffee Shop, Inc.*, No. 19 Civ. 8683 (SLC), 2021 WL 1199414, at *11 (S.D.N.Y. Mar. 30, 2021) (holding $400 hourly rate in FLSA case reasonable) (citing cases). Further, Attorney Aronauer's years of experience litigating over 100 FLSA claims, his commensurate expertise in this area of the law and his role as lead counsel on this matter render an hourly rate of $400 reasonable.

The requested rates of $150 per hour for paralegals is likewise reasonable, as it is "commensurate with the hourly rates typically awarded for the work of paralegals in this District." *KX Tech LLC v. Dilmen LLC*, No. 3:16CV00745(CSH), 2017 WL 2798248, at * 10 (D. Conn. July 13, 2017) (collecting cases). However, Attorney Aronauer attests that three law students also worked on this case. And although he counts those individuals as paralegals, courts in this district have routinely awarded lower rates for work performed by law student interns and summer associates than for paralegals. *See Doe v. Darien Bd. of Educ.*, No. 3:11cv1581 (JBA), 2015 WL 8770003, at *6 (D. Conn. Dec. 14, 2015) (approving $100 per hour rate for legal interns and summer associates); *Morales v. Cancun Charlie's Restaurant*, No. 3:07-cv-1836 (CFD), 2010 WL

14

7865081, at *9 (D. Conn. Nov. 23, 2010) (approving $80 for law student interns). While law students certainly bring value to the process, they are not yet licensed and nor do they have the professional qualifications of a paralegal. The hours for these law student interns will therefore be compensated at $100 per hour.

As to Attorney LaBella, although he submitted a timesheet documenting his work, his affidavit provided no information concerning his background, qualifications, or experience. Absent this information, it is difficult if not impossible to assess the reasonableness of his hourly rate of $400. The Court therefore looks to other cases which have assessed the propriety of hourly rates in FLSA cases. And as noted above, courts within this district routinely award between $300 and $350 per hour for work in this field. The Court awards attorneys' fees for Attorney LaBella's work at the $350 per hour. This rate appears commensurate with the type of work that Attorney LaBella provided, as it appears from his timesheet (and his interactions with the Court) that Attorney LaBella, as local counsel, had a less substantive role in the prosecution of Plaintiff's claims.

Finally, the Court has also reviewed the timesheets submitted by both attorneys and found the number of hours expended in this matter to be reasonable. The case was contested before Defendants ultimately defaulted, and the Court's review of the attorneys' time does not reveal duplicative entries or wasted time. As such, the awards for attorneys' fees and costs are summarized as follows:

| The Law Offices of Jacob Aronauer | | | |
|---|---|---|---|
| *Expense* | *Hourly Rate* | *Hours Worked* | *Total* |
| Jacob Aroneaur | $400 | 31.5 | $12,600.00 |
| Paralegals | $150 | 30.86 | $4,629.00 |
| Student Interns | $100 | 15.5 | $1,550.00 |
| Costs | N/A | N/A | $2,009.75 |
| | | **Grand Total:** | **$20,788.75** |

| Anthony J. LaBella of Ury & Moscow, LLC | | | |
|---|---|---|---|
| *Expense* | *Hourly Rate* | *Hours Worked* | *Total* |
| Anthony J. LaBella | $350 | 34 | $11,900.00 |
| Paralegals | $150 | 7.5 | $1,125.00 |
| | | **Grand Total:** | **$13,025.00** |

Although the total award for attorneys' fees is higher than the damages award, the Court finds these attorneys' fees reasonable. *See Fisher v. SD Protection Inc.*, 948 F.3d 593, 604–05 (2d Cir. 2020) (finding that a proportionality limit on recoverable attorneys' fees is inappropriate and collecting cases in which there were disparities between plaintiff's recovery and attorneys' fees).

**Conclusion**

Judgment shall enter against the Defendants and in favor of the Plaintiff on both the FLSA claim and the CMWA claim. Plaintiff is awarded compensatory damages in the amount of $8,422.60; liquidated damages in the amount of $8,422.60; prejudgment interest in the amount of $1,976.89; and attorneys' fees and costs in the amount of $33,813.75 for a total award of

$52,635.84. Post judgment interest is awarded as allowed by law. The Clerk of Court is directed to enter the Judgment for the Plaintiff consistent herewith and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of October 2021.

_/s/Kari A. Dooley_____
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE